ROBINSON & COMPANY v. THOMAS H. RALPH ET AL.

FILED JUNE 8, 1905. No. 13,815.

1. **Contract:** ACCEPTANCE. Where a written order for threshing machinery contains a condition that it shall not be binding until accepted by the officers of the selling corporation, the signer of the order is not bound by stipulations or limitations therein until its acceptance by such officers.

2. **Pledge.** Where a lot of threshing machinery was consigned to the manufacturer at a point where it was expected to sell the same, and at the request of the manufacturer's general agent, who was in control of the property, money was advanced by an intending purchaser to pay freight charges, and, no sale being made, the agent pledged the machinery to the persons advancing the money until the same was repaid, the pledgee has a lien upon the property to that extent, and the owner is not entitled to its possession until the freight charges are paid.

ERROR to the district court for Greeley county: JAMES N. PAUL, JUDGE. *Affirmed.*

*J. R. Swain* and *T. P. Lanigan,* for plaintiff in error.

*T. J. Doyle, contra.*

LETTON, C.

The plaintiff in error, Robinson & Company, a corporation, plaintiff below, brought this action in replevin to recover from the defendants a lot of threshing machinery. The defendants claimed the right of possession of the property by reason of a lien which they claimed they had upon the same for the sum of $135.10 paid by them for freight upon the same. The cause was tried to the court without a jury, and findings and judgment rendered that the defendants had a special ownership for the amount of the freight charges paid by them, with interest. The controversy arose from these facts: In July, 1903, the defendants, who are farmers residing in Greeley county, gave a written order to the plaintiff, through its local agents at Greeley, Harris & McGinn, for the purchase of the machinery. The contract was sent to the home office of the plaintiff at Richmond, Indiana, and the machinery was shipped to the plaintiff at Greeley. The written order stated the security which the defendants were to furnish, as well as the terms of sale. Upon the arrival of the machinery at Greeley the plaintiff refused to deliver the same to the defendants unless they would execute a chattel mortgage upon $600 worth of personal property in addition to that described in the order. This the defendants refused to do, and, after certain negotiations with the local agents of the plaintiff at Greeley, they started to Lincoln for the purpose of buying a machine of another make. The bill of lading for the machinery was sent to the Greeley State Bank at Greeley, Nebraska, with instructions to deliver it to the defendants upon their executing the notes and mortgage described in the written agreement, with the further security demanded. The dispute over the giving of the additional security and the delivery of the property was communicated by the local agents to one H. A. Smith at Omaha, who appeared to be the general agent of the plaintiff in this state. He apparently conveyed this information to the home office of the plaintiff, and on Au-

gust 7th was instructed by wire to have settlement made according to the original contract; and, presumably after plaintiffs had been informed that the parties were going to Lincoln to purchase another machine, another message was sent to Smith as follows: "Go yourself. Follow parties up. Get settlement or notify competitors, also us. Have wired bank deliver you papers." Smith immediately went to Lincoln, and met the local agent and the defendants at the Lincoln Hotel, where, after some negotiations, Smith reduced the price $100, and a new order was executed. It was also agreed by Smith orally that he would go to Greeley, unload the machinery, put it in shape to run and start it, and that when it proved satisfactory to the defendants they were to sign the notes. At that time the machinery had not been unloaded. The parties then returned to Greeley, Smith accompanying them. The next morning the machinery was unloaded—Smith and another agent of the plaintiff, named Gill, overseeing the unloading—and it was taken to the farm of one Fitzpatrick, who had grain to thresh. The weather was rainy; so nothing was done at that time, and Smith went home, but he returned the next week. The local agent, Harris, started the machine and tried to run it one day, and Smith and Gill also worked with it for three days. The machine did not do satisfactory work, and Smith and Gill finally abandoned the attempt to operate it, and it was taken away from the work under Smith's direction. At the time the machine was unloaded, the defendants advanced the money to pay the freight at Smith's request. When the attempt to work the machine was given up, defendant Ralph informed Smith that he wanted his freight money. Smith then told him that he would get the money, but that he did not have that much money with him, and that he could hold the machine until the freight money was paid. Apparently no further attempt was made to operate the machine, and the same was held by the defendants subject to the order of the plaintiff upon payment of the freight. There is no dispute about these facts. But the

plaintiff's contention is that Smith was only a special agent with limited powers which were specified in the printed order form, and that he had no authority from them to deliver the machine to the defendants without the execution of the notes and mortgage provided in the order, and had no authority to agree that the machine should be held by the defendants as security for the repayment of the freight charges.

The plaintiff relies upon the rule laid down in *Bradley & Co. v. Basta,* 71 Neb. 169, which holds, in effect, that oral statements and warranties made antecedent to and contemporaneous with the signing of a written contract cannot be considered for the purpose of setting aside or superseding the written instrument. This rule is elementary, and if the facts warranted its application in this case we should apply the same. In the instant case, however, the written order was never accepted by the plaintiff's officers at its office in Richmond as its terms required before it would be binding upon the company, and therefore the written contract was never completed. It was merely an offer to purchase, and at the time of the transaction by Smith had never been accepted by the plaintiff, or even seen by any of its officers qualified to accept and agree to the same under the terms of the printed matter.

The case stands thus, therefore: That an agent of the plaintiff, apparently clothed with complete control and authority over the property, requests the defendants to pay the freight upon machinery billed to the plaintiff, and by means of the bill of lading furnished him by the plaintiff obtains possession of the property. While in complete control and possession of the same, he makes an agreement that the defendants may have a lien upon it until the freight charges advanced by them are paid. The plaintiff is in no worse condition, so far as the freight charges are concerned, than it was before Smith made this verbal pledge and agreement with the defendants. The carrier had a lien upon the property for this amount,

and, under the circumstances, we are of the opinion that the defendants were, in effect, subrogated to that lien. The money was paid to the plaintiff's use at the request of its agent, and we see no good reason why the defendants should suffer by this act.

But, even if we take the view that the telegram recited gave Smith authority to accept the order, and waived the conditions therein that the contract was not binding upon the company until accepted by its officers at the home office, the written order contained a warranty that with proper management the thresher would do as much and as good work as any other of similar size for the same purpose, and provided for the rescission of the contract if it failed to comply with the terms of the warranty.. When the local agent, Harris, the expert, Gill, and the general agent, Smith, all failed to make the machine work, it seems clear that it failed to meet the conditions of the written warranty, and that, even if the contract had been fully executed, the defendants would have had the right to rescind, under all the circumstances, and to recover back their outlay. We think it immaterial which horn of the dilemma the plaintiff takes and that in either event the defendants are entitled to retain the possession of the property until the money advanced by them is repaid.

We think the district court committed no error, and that its judgment should be affirmed.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.